1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBORAH M.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

Case No. 3:19-cv-05760

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12    Plaintiff has brought this matter for judicial review of Defendant's denial of her

13 application for disability insurance benefits.

14    The parties have consented to have this matter heard by the undersigned

15 Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

16 MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred,

17 and the ALJ's decision is reversed and remanded for further administrative proceedings.

18                    I.    ISSUES FOR REVEW

19    1.  Did the ALJ err in evaluating Plaintiff's impairments at step two?
     2.  Did the ALJ properly evaluate the medical opinion evidence?
20    3.  Did the ALJ err in assessing lay witness statements?

21                    II.    BACKGROUND

22    On August 21, 2013, Plaintiff filed an application for disability insurance benefits,

23 alleging that she became disabled on April 16, 2012. AR 11, 181-82. Plaintiff's

24 application was denied upon initial administrative review and on reconsideration. AR 11,

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

115-21, 123-27. A hearing was held before Administrative Law Judge ("ALJ") James W. Sherry on March 19, 2015. AR 28-81, 809-62. On May 18, 2015, ALJ Sherry issued a written decision finding that Plaintiff was not disabled. AR 8-22, 764-78. The Social Security Appeals Council denied Plaintiff's request for review on July 27, 2016. AR 1-6, 784-89.

On September 27, 2016, Plaintiff filed a complaint in this Court seeking judicial review of ALJ Sherry's written decision. AR 791. On August 30, 2017, this Court granted a stipulated motion to reverse and remand this case for further administrative proceedings so the ALJ could re-evaluate Plaintiff's testimony, opinion evidence from Alicia Grattan, M.D., Amanda Kaare, OTP, and Kathleen Heppell, MA, and lay witness testimony from Plaintiff's husband. AR 790-802. On August 2, 2017, the Appeals Council vacated ALJ Sherry's decision and issued an order remanding the case for further administrative proceedings consistent with the Court's order. AR 803-08.

On January 11, 2018, ALJ Allen Erickson held a new hearing. AR 692-763. On July 31, 2018 ALJ Erickson issued a written decision finding that Plaintiff was not disabled. AR 659-80. On June 17, 2019, the Appeals Council declined to assume jurisdiction over Plaintiff's case. AR 648-54.

On August 16, 2019, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 1. Plaintiff seeks disability benefits from the April 16, 2012 onset date through December 31, 2015; Plaintiff returned to gainful employment in January 2016. AR 663, 709.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### III.    STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Garrison,* 579 F.3d at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

IV.   DISCUSSION

In his May 2015 decision, ALJ Sherry found that Plaintiff had the following severe, medically determinable impairments: degenerative disc disease of the lumbar spine with lumbago; irritable bowel syndrome; restless leg syndrome obstructive sleep apnea; chronic left knee pain; type 2 diabetes mellitus; post-traumatic stress disorder; and major depressive disorder. AR 13. ALJ Sherry also found that Plaintiff had the non-severe impairment of osteoarthritis of the left knee. *Id.*

In his 2018 decision, ALJ Erickson found that Plaintiff had the following severe, medically determinable impairments: degenerative joint disease of the left sacroiliac joint and left knee; fibromyalgia; major depressive disorder; and posttraumatic stress disorder. AR 665. ALJ Erickson found that Plaintiff had the non-severe impairments of degenerative disc disease of the lumbar spine; irritable bowel syndrome; restless leg syndrome; obstructive sleep apnea; and type 2 diabetes mellitus. AR 665-66.

Based on the limitations stemming from these impairments, ALJ Erickson assessed Plaintiff as being able to perform a reduced range of light work with a range of postural, environmental, and mental limitations. AR 668. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff could perform other light, unskilled work at step five of the sequential evaluation; therefore ALJ Erickson determined at step five that Plaintiff was not disabled. AR 679-80, 752-55.

A.   Whether the ALJ erred at step two of the sequential evaluation

Plaintiff contends that at step two of the sequential evaluation, ALJ Erickson did not adequately explain why he found several impairments non-severe that ALJ Sherry found severe, and did not incorporate the limitations stemming from Plaintiff's non-severe impairments into Plaintiff's residual functional capacity ("RFC"). Dkt. 11, pp. 7-8.

1         At step two of the sequential evaluation process, the ALJ determines whether the

2   claimant "has a medically severe impairment or combination of impairments." *Smolen v.*

3   *Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §

4   404.1520(a)(4)(ii). This step is a threshold determination to identify weak claims; it is not

5   a means for identifying severe conditions for purposes of limiting the RFC analysis to

6   severe conditions. *Buck v. Berryhill,* 869 F.3d 1040, 1048-49 (9th Cir. 2017).

7         Here, ALJ Erickson found that several impairments that ALJ Sherry found severe

8   in his 2015 decision, specifically degenerative disc disease of the lumbar spine, irritable

9   bowel syndrome, restless leg syndrome, obstructive sleep apnea, and type 2 diabetes

10  mellitus, were non-severe. AR 13, 665-66.

11        In finding these impairments non-severe, ALJ Erickson reasoned that they did

12  not cause significant functional limitations during the period at issue, between Plaintiff's

13  alleged disability onset date of April 16, 2012 and her date last insured, September 30,

14  2014. AR 665-66, 670. ALJ Erickson found that imaging of Plaintiff's lumbar spine

15  revealed only mild degenerative changes, and Plaintiff's irritable bowel syndrome,

16  diabetes, sleep apnea and restless leg syndrome were managed with treatment and

17  medication. AR 364, 369, 532, 549, 619, 666, 968, 993, 997, 999.

18        In *Buck v. Berryhill*, after an initial hearing, the ALJ found that Plaintiff had only

19  two severe impairments: attention deficit hyperactivity disorder ("ADHD") and bipolar

20  disorder. 869 F.3d 1040, 1048 (9th Cir. 2017). After a second hearing, held pursuant to

21  a federal court remand order, the ALJ found three new severe impairments at step two:

22  personality disorder, marijuana addiction (in remission), and methamphetamine

23

24

25

1   addiction (in remission). *Id.* Despite the addition of these new impairments, the ALJ

2   assessed an identical RFC after both hearings. *Id.*

3          The Court in *Buck* affirmed the ALJ's decision on this point, and emphasized that

4   an ALJ must consider limitations and restrictions imposed by *all* an individual's

5   impairments, even those that are not "severe". 869 F.3d 1040, 1049 (9th Cir. 2017)

6   (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-

7   8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)).

8          This case is distinguishable from *Buck.* Unlike the situation in *Buck* – where the

9   ALJ made the same determination of the RFC regardless of whether each of the

10  conditions had been categorized as severe, or non-severe – here, despite assessing

11  identical impairments in both decisions, ALJ Erickson relied on his finding that Plaintiff's

12  impairments were non-severe to assess a significantly less restrictive RFC that appears

13  to omit limitations related to Plaintiff's non-severe impairments. AR 668, *compare with*

14  AR 16. Accordingly, the ALJ erred at step two of the sequential evaluation.

15         B.   Whether the ALJ erred in evaluating the medical opinion evidence

16         Plaintiff contends that the ALJ erred in evaluating the opinion of examining

17  psychiatrist Alice Grattan, M.D. Dkt. 11, pp. 10-12.

18         In assessing an acceptable medical source – such as a medical doctor – the ALJ

19  must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

20  either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

21  1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*,

22  849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is

23  contradicted, the opinion can be rejected "for specific and legitimate reasons that are

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 6

1   supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citing

2   *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d

3   499, 502 (9th Cir. 1983)).

4   Dr. Grattan examined Plaintiff on October 26, 2013. AR 487-91. Dr. Grattan's

5   evaluation consisted of a clinical interview and a mental status examination. Based on

6   this evaluation, Dr. Grattan opined that Plaintiff could perform simple and repetitive

7   tasks, but would have more difficulty with detailed and complex tasks. AR 491. Dr.

8   Grattan stated that Plaintiff could accept instructions from supervisors and interact with

9   co-workers and the public if needed. *Id.* Dr. Grattan further opined that Plaintiff could

10  maintain regular attendance in the workplace, but could not perform a normal workweek

11  without moderate interruptions from her psychiatric condition, and would not deal well

12  with the stress encountered in a usual competitive work environment. *Id.*

13  Dr. Grattan stated that Plaintiff's mental health symptoms were complicated by

14  chronic pain and other somatic complaints, but were treatable, and could improve with

15  optimal treatment over the next 12 months. AR 491.

16  The ALJ assigned "some weight" to Dr. Grattan's opinion, reasoning that Dr.

17  Grattan was able to perform an in-person examination, and her opinion that Plaintiff

18  could perform simple and repetitive tasks, accept instructions from supervisors and

19  interact with coworkers and the public if needed, and maintain regular attendance in the

20  workplace was largely consistent with the results of Dr. Grattan's examination and

21  Plaintiff's self-reported activities of daily living. AR 674.

22  The ALJ also found that Plaintiff was more limited than opined by Dr. Grattan in

23  terms of social functioning, given Dr. Grattan's contemporaneous findings that Plaintiff

24

25

1    presented as tearful throughout the interview as well as with an angry mood and a

2    restricted affect. *Id.*

3           The ALJ assigned "little weight" to the Global Assessment of Functioning ("GAF")

4    score assessed by Dr. Grattan and Dr. Grattan's opinion that Plaintiff would not deal

5    well with the stress encountered in a usual competitive work environment, reasoning

6    that: (1) these findings were inconsistent with Plaintiff's self-reported activities of daily

7    living; (2) Plaintiff's mental health symptoms were partly attributable to situational

8    stressors; and (3) these limitations were inconsistent with Dr. Grattan's statement that

9    Plaintiff's condition could improve with optimal treatment after 12 months. AR 674.

10          With respect to the ALJ's first two reasons, the Social Security Administration

11    must set forth the reasoning behind its decisions in a way that allows for meaningful

12    review, and the ALJ must build an accurate and logical bridge from the evidence to his

13    or her conclusions. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015);

14    *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted); see also

15    *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (An ALJ errs when he or she

16    "merely states" that facts "point toward an adverse conclusion" yet "makes no effort to

17    relate any of these" facts to "the specific medical opinions and findings he rejects."). The

18    ALJ has not stated which of Plaintiff's activities of daily living are inconsistent with Dr.

19    Grattan's opinion, or indicated how Plaintiff's mental health symptoms were situational

20    in nature.

21          As for the ALJ's third reason, Dr. Grattan stated that "I *anticipate* that all of these

22    conditions *could* improve with *optimal* treatment over the next 12 months." AR 491

23    (emphasis added). *See* 20 C.F.R. § 404.1529(c)(3)(iv) (the effectiveness of medication

24

25

1  and treatment are relevant to the evaluation of a claimant's alleged symptoms);

2  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment

3  successfully relieving symptoms can undermine a claim of disability).

4     A speculative statement that an individual's impairments are potentially

5  susceptible to treatment is different from a finding that those impairments actually

6  improved following treatment, and Dr. Grattan's statement is not inconsistent with her

7  opinion.

8     Accordingly, the ALJ has not provided specific and legitimate reasons for

9  discounting Dr. Grattan's opinion.

10     C.  Whether the ALJ erred in evaluating opinions from non-acceptable medical
        sources

11

12     Plaintiff contends that the ALJ erred in evaluating the opinions of therapist

13  Kathleen Heppell, MA, LMCHA, occupational therapist Amanda Kaare, OTP, and

14  Plaintiff's husband. Dkt. 11, pp. 8-14.

15     When evaluating opinions from non-acceptable medical sources such as a

16  therapist or a family member, an ALJ may expressly disregard such lay testimony if the

17  ALJ provides "reasons germane to each witness for doing so." *Turner v. Commissioner

18  of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v. Apfel*, 236 F.3d 503,

19  511 (9th Cir. 2001); 20 C.F.R. § 404.1502.

20     1.  Ms. Heppell

21     Plaintiff's therapist, Ms. Heppell, treated Plaintiff between September 2012 and

22  March 2015, and provided 4 opinions concerning Plaintiff's mental limitations. AR 1077.

23     On September 30, 2013, Ms. Heppell recommended that Plaintiff receive

24  disability insurance benefits and help to explore possible employment options that might

25

1    meet her physical and emotional capabilities. AR 484. Ms. Heppell stated that it was

2    possible that Plaintiff could engage in full time work, but that Plaintiff, who was then

3    working part time, was having difficulty adjusting from being her own boss and meeting

4    her own schedule to being under the supervision of others as would have to deal with

5    symptoms of depression, anger, and PTSD if she came into conflict with others at work.

6    *Id.* Ms. Heppell stated that Plaintiff had made progress in therapy, and she was hopeful

7    concerning Plaintiff's prognosis. *Id.*

8         On March 10, 2014, Ms. Heppell again recommended that Plaintiff receive

9    disability insurance benefits and help to explore job opportunities, and again stated that

10   it was possible that Plaintiff might be able to "work into full time work." AR 505.

11        On February 13, 2015, Ms. Heppell completed a detailed functional capacity

12   evaluation. AR 574-77. Ms. Heppell opined that Plaintiff would be "off-task" for more

13   than 30 percent of an 8-hour workday due to her mental impairments, particularly if her

14   job had a "high physical requirement." AR 576. Ms. Heppell stated that Plaintiff would be

15   unable to complete an 8-hour workday more than 30 percent of the time due to her

16   mental impairments, and would be unable to sustain full-time work for more than 6

17   months. AR 577.

18        On March 2, 2015, Ms. Heppell again recommended that Plaintiff receive

19   disability insurance benefits and help to explore job opportunities, and again stated that

20   it was possible that Plaintiff might be able to "work into full time work." AR 326.

21        The ALJ assigned "great weight" to the GAF scores assessed by Ms. Heppell.

22   AR 677. However, the ALJ otherwise assigned "little weight" to Ms. Heppell's opinions,

23   reasoning that: (1) they were inconsistent with Ms. Heppell's treatment notes, which

24

25

1   revealed largely unremarkable objective findings; (2) Ms. Heppell's opinions were

2   inconsistent with Plaintiff's activities of daily living, specifically Plaintiff's decision to

3   continue looking for work and her ability to engage in part time work during the period at

4   issue; (3) Ms. Heppell stated that Plaintiff's mental health symptoms were largely driven

5   by situational stressors; (4) Ms. Heppell's opinions concerning Plaintiff's limitations were

6   based partially on Plaintiff's physical impairments, which Ms. Heppell, as a mental

7   health therapist, was not qualified to assess; and (5) Ms. Heppell's opinions were based

8   on Plaintiff's unreliable subjective allegations. AR 677.

9          With respect to the ALJ's first two reasons, an inconsistency between the

10  medical evidence and the opinion of a non-acceptable medical source can constitute a

11  germane reason for discounting that opinion. *See Baylis v. Barnhart*, 427 F.3d 1214,

12  1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is a germane reason for

13  discrediting lay testimony); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (An ALJ

14  may discount lay testimony that "conflicts with medical evidence"). Similarly, a conflict

15  between the opinion of a non-acceptable medical source and a claimant's activities of

16  daily living can serve as a germane reason for discounting such an opinion. *Carmickle*

17  *v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2007).

18         In citing the inconsistencies between the limitations assessed by Ms. Heppell, the

19  medical record, and Plaintiff's work activity, the ALJ has provided germane reasons for

20  discounting her opinions.

21         2. Ms. Kaare

22         Plaintiff's occupational therapist, Ms. Kaare, provided an assessment of Plaintiff's

23  physical capacity on February 26, 2015. AR 629-32. Based on a physical examination,

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 11

1    Ms. Kaare opined that Plaintiff would be able to stand 2 to 4 hours, sit 3 to 4 hours, and

2    walk 30 minutes in an 8-hour day. AR 631. Ms. Kaare added that Plaintiff could

3    occasionally climb stairs, squat, and kneel and frequently turn her head and neck, twist,

4    stoop, bend, reach and climb ladders during a workday. *Id.* Ms. Kaare opined that

5    Plaintiff could perform light work. AR 632.

6          The ALJ assigned "some weight" to Ms. Kaare's opinion, reasoning that Ms.

7    Kaare conducted an in-person examination and her opinion that Plaintiff could perform

8    light work with some postural limitations was consistent with largely unremarkable

9    physical examination results, but that additional postural limitations were justified based

10   on the opinion of Dr. Koukol. AR 676. However, the ALJ found that Ms. Kaare's opinion

11   concerning Plaintiff's ability to sit, stand, and walk during an 8-hour workday was

12   inconsistent with: (1) the largely unremarkable results of Dr. Gaffield's consultative

13   examination; (2) Plaintiff's activities of daily living; and (3) Plaintiff's improvement

14   following physical therapy. *Id.*

15         In citing the inconsistencies between Ms. Kaare's opinion, the medical record,

16   and Plaintiff's activities of daily living, the ALJ has provided germane reasons for

17   discounting her opinion. *Baylis*, 427 F.3d at 1218; *Carmickle,* 533 F.3d at 1164; *Lewis*,

18   236 F.3d at 512 (In rejecting lay testimony, the ALJ need not cite the specific record as

19   long as "arguably germane reasons" for dismissing the testimony are noted, even

20   though the ALJ does "not clearly link his determination to those reasons," and

21   substantial evidence supports the ALJ's decision).

22         As such, the ALJ has provided germane reasons for discounting Ms. Kaare's

23   opinion.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

1

2
3.   <u>Plaintiff's Husband</u>

3
Plaintiff's husband provided a statement concerning Plaintiff's limitations on

4
March 9, 2015, which largely re-stated Plaintiff's own symptom testimony. AR 198, 206,

323.

5
The ALJ assigned "little weight" to this statement, reasoning that: (1) it was

6
inconsistent with largely normal physical and mental examinations conducted during the

7
period at issue; (2) it was inconsistent with Plaintiff's activities of daily living, specifically

8
Plaintiff's decision to continue looking for work and her ability to engage in part time

9
work during the period at issue; (3) Plaintiff's pain symptoms improved with exercise;

10
and (4) Plaintiff's sleep apnea was found non-severe at step two of the sequential

11
evaluation. AR 678.

12
For the reasons discussed above in connection with Ms. Heppell's opinion, the

13
ALJ has provided germane reasons for discounting the statement from Plaintiff's

14
husband. *See supra* Section C.1.

15
D.   <u>Remand with Instructions for Further Proceedings</u>

16
"'The decision whether to remand a case for additional evidence, or simply to

17
award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664,

18
682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If

19
an ALJ makes an error and the record is uncertain and ambiguous, the court should

20
remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

21
(9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

22
the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

23
at 668.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 13

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, the ALJ must re-evaluate Plaintiff's impairments at step two and the opinion of Dr. Grattan. Therefore, there are outstanding issues which must be resolved and remand for further administrative proceedings is the appropriate remedy.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ erred when he found Plaintiff was not disabled. Defendant's decision to deny benefits is therefore REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to re-assess Plaintiff's impairments at step two and re-evaluate Dr. Grattan's opinion.

Dated this 22nd day of June, 2020.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge